IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JAYE DEE GAUCIN,                                              CV. 09-993-AC

                Plaintiff,                        FINDINGS AND
                                                              RECOMMENDATION
    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____

ACOSTA, Magistrate Judge:

      Claimant Jaye Dee Gaucin ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA. *See* 42 U.S.C. §§ 1381-83f (2010). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, the court finds that the Commissioner's decision should be reversed and remanded for reconsideration, as detailed below.

FINDINGS & RECOMMENDATION        1        {KPR}

*Procedural History*

Claimant protectively filed for SSI on August 21, 2006, alleging a disability onset date of January 22, 2003. The claim was denied initially and on reconsideration. On June 3, 2008, a hearing was held before an Administrative Law Judge ("ALJ"), who issued a decision on August 28, 2008, finding Claimant not disabled. Claimant requested review of this decision on September 24, 2008. The Appeals Council denied this request, making the ALJ's decision the Commissioner's final decision. Claimant filed for review of the final decision in this court on August 24, 2009.

*Standard of Review*

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Andrews*, 53 F.3d at 1039-1040. The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. In determining a claimant's residual functional capacity ("RFC"), an ALJ must consider all relevant evidence in the record, including,

*inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996).

*Factual Background*

I.     Record Evidence

On August 24, 2006, Claimant was evaluated by the Social Security Administration in conjunction with her application for benefits. The interviewer observed that Claimant had difficulty walking, and wrote: "Claimant had to get up and walk a little bit. She did have difficulties with walking, standing and sitting. Appeared to be in pain." (Tr. 107.) On September 20, 2006, Claimant filled out a "Function Report." Claimant reported that she sometimes wakes up with swelling in her ankles and legs, up to her knees, which prevents her from standing and sitting. (Tr. 109.) She cares for a dog and cat by providing them with dry food and water and letting them in and out. (Tr. 110.) Claimant has to take stairs one at a time and has difficulty sleeping at times due to aches and cramping. While capable of performing all tasks of personal care, those tasks are tiring and she has to sit or lean on something while performing them. (Tr. 110.) Claimant manages all cooking and household tasks, including mowing the lawn and washing her truck, but finds it difficult to motivate herself to do them because they are tiring and take a long time to complete. (Tr. 111.) Claimant still pursues her old hobbies, but in a much more limited way. (Tr. 113.) Usually, when she goes anywhere, she requires a comfortable chair that she can get in and out of easily, as she cannot stand for long periods of time. (Tr. 114.)

On September 23, 2006, Claimant's mother, Jeanette Dee Griffin ("Griffin"), filled out a

"Function Report – Third Party."  Griffin noted Claimant's myriad postural limitations, difficulty standing and walking, and need for a railing when climbing stairs. (Tr. 118.)  She noted Claimant's need to take frequent breaks and characterized her ability to stand or walk as variable in duration, lasting between five minutes and an hour. (Tr. 122.)  Claimant is limited in engaging in her old interests, like spending time outdoors, and sometimes experiences depression as a result. (Tr. 119.)  She has a difficult time sleeping and needs to rest constantly.  Griffin wrote that Claimant experiences stress over her disability, debts arising from her divorce, and her lack of income. (Tr. 123.)  In Griffin's observation, Claimant is not capable of performing work she has done in the past. (Tr. 124.)

On a pain questionnaire, Claimant reports having constant pain in her hips, legs, lower back, and knees.  The pain gets worse with sustained activity and stops only when she is able to lie down and go to sleep. (Tr. 125.)  She takes over-the-counter medication as directed and has been prescribed Naproxen, an anti-inflammatory and pain reliever.  She reports difficulty with housework in that she must constantly take breaks and, even then, has a tendency to get overtired and need to rest. (Tr. 126.)

Claimant's medical records reflect complaints of knee and hip pain. (Tr. 166-168.)  Lab tests performed in May 2006 reveal mild degenerative changes in Claimant's knees and hips.  Claimant was also prescribed anti-inflammatory medication to manage her joint pain. (Tr. 180-181.)

On October 17, 2006, Dr. Sharon B. Eder ("Dr. Eder") assessed Claimant's residual functional capacity.  She concluded, based on Claimant's medical records, that she is capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing and walking for six hours in an eight-hour day, sitting for six hours in an eight hour day, and unlimited pushing and pulling.

(Tr. 184.) She is capable of frequent stooping and occasional climbing, balancing, kneeling, crouching, and crawling. (Tr. 185.) Dr. Eder found no manipulative, visual, communicative, or environmental limitations. (Tr. 186-187.)

In April and May 2006, Claimant saw Megan Haase ("Haase"), a nurse practitioner, several times for complaints of knee and hip pain. Lab reports from May 2, 2006, note mild degenerative changes in Claimant's knees as well as her hips, and a "[m]ild old posttraumatic deformity" of one hip. (Tr. 180-181.) On May 11, 2006, Haase's treatment notes state that Claimant suffered from degenerative changes in hips and knees as a result of both a motor vehicle accident and a congenital deformity, noting that Claimant underwent hip surgery in the 1970s. (Tr. 166.) Claimant was seen on September 22, 2006, by Dr. Charles Ayres, complaining of dermatitis. (Tr. 164.)

In May 2007, Claimant reported symptoms of depression, specifically "lack of energy, difficulty with sleeping, feeling sad, down hearted, lack of energy to do activities." (Tr. 211.) In both June and July 2007, Claimant reported that the Prozac was "working well for her." (Tr. 205, 207.) On January 14, 2008, Claimant was deemed stable on Prozac. (Tr. 204.) In early 2008, Claimant again saw Haase, complaining of arm and shoulder pain. (Tr. 201-204.) On February 18, 2008, Haase wrote that Claimant was "stable on PROZAC[,]" and, though she expressed a desire to stop the medication, ultimately agreed to continue it for another year. (Tr. 201.)

II. Claimant's Testimony

Claimant testified at the administrative hearing as follows. On January 2003, she was involved in a motor vehicle accident. She sustained injuries for which she was not hospitalized, though she received neck and leg braces. Claimant saw an orthopedist who put her in a leg brace for two months because her tendons had been stretched out. Claimant's next appointment with a

medical professional took place in October 2006, when she saw Haase. Claimant was advised to get physical therapy on her knee but could not afford it at the time. In 2008, Claimant injured her shoulder shoveling snow, which made her daily activities difficult.

Claimant testified that her knee is still swollen from the motor vehicle accident and often hyperextends, causing her to fall. Her knee also causes her difficulty in climbing and kneeling. Claimant has difficulty standing and walking for long periods, as it aggravates her hip and knee pain. She stated that the pain is constant and causes her to feel that her joints will not support her. Specifically, Claimant stated that she could sit for thirty minutes and stand for twenty to thirty minutes at a time. She needs to lie down two or three times a day, at unpredictable times.

Claimant also testified to experiencing depression following the motor vehicle accident. This results in episodes of crying, apathy, and difficulty interacting with others. She went to an orientation for a mental health treatment program, but never went back after the initial visit.

III.    Vocational Expert Testimony

The Vocational Expert ("VE") based her conclusions on Dr. Eder's RFC Assessment. (Tr. 49.) She testified that Claimant had previously been employed as a retail store clerk, a janitor, a shipping clerk, and a garment sorter. (Tr. 47.) Based on postural limitations and Claimant's inability to stand for more than six hours in an eight hour workday, the VE concluded that Claimant could not perform her past relevant work. *Id.* The VE gave examples of positions Claimant could perform, including bench work, small products assembly, booth cashiering, and mail clerk, all of which fall generally into the light work category. (Tr. 50-51.)

*Summary of the ALJ's Findings*

The ALJ engaged in the five-step "sequential evaluation" process when he evaluated

Claimant's disability, as required. *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

I.      Steps One and Two

At Step One, the ALJ concluded that Claimant had not engaged in any substantial gainful activity since the onset of her alleged disability. (Tr. 12.) At Step Two, the ALJ determined that Claimant had the following severe impairments: bilateral degenerative joint disease of the hips and knees, and obesity. (Tr. 12.) The ALJ noted that Claimant suffered from non-severe depression and pain in her shoulder and arm. (Tr. 12.) The ALJ's specific findings as to each impairment, both severe and non-severe, are detailed below.

      a.      *Degenerative Joint Disease*

Claimant was injured in a motor vehicle accident in January 2003 and underwent two months of physical rehabilitation. In April 2006, Claimant established care at Community Clinic of Bend ("CCB"), reporting knee trauma and "bilateral hip pain." (Tr. 14.) At the time of her first appointment, she had not received medical care for three years. Diagnostic tests revealed "no acute abnormality" in her hips, and only mild deformities resulting from trauma and mild "hypertrophic degenerative changes[.]" (Tr. 14.) Claimant's knees revealed only "mild articular degenerative changes[.]" (Tr. 14.) CCB records indicate that pain management had effectively controlled Claimant's pain. Claimant was advised by a nurse practitioner that modifying her diet and activity level would positively impact her joint symptoms, but there is no evidence that she heeded this advice. Claimant also reported shoveling snow, in spite of her claimed joint pain and obesity.

Claimant's mother reported that Claimant retained the ability to engage in most activities of daily living, as well as occasional fishing and camping. In general, she found Claimant slower in

performing those activities. She stated that Claimant could lift twenty to thirty pounds, but had difficulty walking long distances and had "difficulties with squatting, kneeling, bending and other postural limitations that involved her knees." (Tr. 15.)

At hearing, Claimant reported lower back pain that prevented her from sitting for extended periods of time. She reported walking for only twenty to thirty minutes at a time and needing to lie down two or three times each day. The ALJ noted that these limitations were not supported by record evidence.

  *b.*  *Obesity*

The ALJ noted that obesity was no longer a "listing" for purposes of the regulations, but concluded that Claimant's obesity was severe. Obesity is characterized as severe "when, alone or in combination with another medically determinable physical or mental impairment[], it significantly limits an individual's physical or mental ability to do basic work activities." (Tr. 13.) The ALJ referred twice to Claimant's "obese body habitus" as an element of Claimant's overall limitation profile.

  *c.*  *Depression*

Claimant's depression is controlled with medication, specifically Prozac. She has not been hospitalized or received ongoing treatment for depression. Claimant visited CCB in 2006 and initiated care. (Tr. 12.) Contrary to her testimony that she became depressed following a motor vehicle accident in 2003, treatment records do not mention symptoms of depression until 2007. Shortly thereafter, Claimant's symptoms were stabilized with medication and, as recently as February 2008, records indicate that Claimant has remained stable over time. The record does not contain evidence thereafter of ongoing problems related to depression.

*d.   Shoulder and Arm Pain*

Claimant's arm and shoulder began hurting after shoveling snow in January 2008. Although there was swelling and tenderness, Claimant "retained full range of motion and motor strength in her upper extremities." (Tr. 12. ) The condition was successfully treated with Prednisone and Flexiril, as reported the following month. The ALJ concluded that this impairment was non-severe and would not last the durational requirement of twelve months.

II.   Step Three

At Step Three, the ALJ concluded that "[C]laimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 13.)

III.   Claimant's RFC

The ALJ found that Claimant has the RFC

to lift and carry 20 pounds occasionally and 10 pounds frequently; with push and pull limited to the above weights; stand and walk six hours in an eight hour workday; and sit six hours in an eight hour workday. The Claimant is limited to occasional climbing of stairs, ramps, ladders, ropes and scaffolds; balancing; crawling; crouching; and kneeling. The claimant is precluded from walking on uneven terrain.

(Tr. 14.) The ALJ based this on his findings as to Claimant's impairments, specifically "taking into consideration her bilateral knee and hip symptoms and obese body habitus." (Tr. 15.)

IV.   Step Four

At Step Four, the ALJ concluded that Claimant is not capable of performing past relevant work, specifically that of a retail store clerk, janitor, and garment sorter. (Tr. 15.) This determination was based on the testimony of the VE.

//

V.   Step Five

At Step Five, the ALJ concluded that Claimant was capable of performing other work that exists in substantial numbers in the national economy. The ALJ cited VE testimony that a hypothetical individual with Claimant's limitations could perform the jobs of small products assembler (bench work), booth cashier/ticket seller, and mail clerk. (Tr. 16.) Accordingly, the ALJ found Claimant not disabled.

*Discussion*

Claimant argues that the ALJ erred in his disability determination by (1) failing to take her obesity into account and (2) failing to develop the record.

I.   Obesity

The proper evaluation of obesity is addressed by Social Security Ruling 02-01p. The ruling provides that obesity is considered severe "when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." Social Security Ruling ("SSR") 02-01p, at *4 (2002). When considering the impact of obesity in combination with other impairments, the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments [and] will evaluate each case based on the information in the case record." *Id*. at *6. The ALJ must "explain how [the ALJ] reached [his or her] conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7.

Here, Claimant argues that the ALJ erred in finding her obesity to be a severe impairment, but failing to account for its impact in formulating her RFC and determining whether she was disabled. The Commissioner responds that, so long as the ALJ includes the limitations posed by

obesity in Claimant's RFC, further specificity is not required and that Claimant has failed to produce evidence of functional limitations caused by her obesity.

In formulating the claimant's RFC, an ALJ is not required to "[prepare] a function-by-function analysis for medical conditions or impairments that the ALJ [finds] neither credible nor supported by the record[.]" *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing SSR 96-8p). However, as SSR 02-01p provides, obesity is considered severe when it "significantly limits" the Claimant's ability to work. Here, the ALJ cited standards for assessing obesity in Social Security claims but he did not explain how this significant limitation figured into Claimant's RFC or the disability determination as a whole. In failing to explain how obesity impacted Claimant's ability to work, the ALJ erred.

The Commissioner argues that, to the extent the ALJ erred in classifying Claimant's obesity as severe, rather than non-severe, such error was harmless "because it was to [Claimant's] advantage." (Defendant's Brief 7.) An ALJ's error is harmless where it "was inconsequential to the ultimate nondisability determination." *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2005) (citations omitted). One category of harmless error occurs "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Id*. The Commissioner's argument is misplaced. Claimant does not argue that the ALJ's Step Two finding of severe obesity was in error. Rather, Claimant objects to the ALJ's failure to account for her obesity after characterizing it as a significant limitation of her ability to work. The court cannot excuse the ALJ's failure to account for an impairment by arguing that the ALJ *could have* classified it as non-severe in the first place.

The ALJ erred in failing to explain how obesity impacted Claimant's ability to work, and this

error was not harmless. The matter should be reversed and remanded for proper consideration of this issue by the ALJ.

II.     Development of the Record

Although the claimant bears the burden of establishing his or her disability, the ALJ has an independent duty to "'fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). The regulations state that where needed information "is not readily available from the records of [the claimant's] medical treatment source, or [the ALJ] is unable to seek clarification from [the claimant's] medical source," the ALJ will order a consultative exam at the SSA's expense. 20 C.F.R. § 416.912(a). Generally, such an exam is called for where "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the claimant's] claim," but may also be ordered on other grounds, including but not limited to the unavailability of medical information and ambiguity or conflict in the existing record. 20 C.F.R. § 416.919a(b).

Claimant contends that the ALJ failed to develop the record with respect to her obesity and depression and, thus, based his conclusions on incomplete information. Claimant explains that creation of a medical record was frustrated by her lack of health insurance. Accordingly, Claimant maintains, the ALJ should have ordered a consultative examination to determine the extent of Claimant's impairments. The Commissioner responds that the ALJ had no duty to develop the

record in this case because the ALJ's findings were supported by substantial evidence. And, even if the record required development, the ALJ discharged that duty by leaving the record open for supplementation after the hearing.

    *A.    Depression*

The court finds that the evidentiary record adequately addresses Claimant's depression and the ALJ did not err in failing to develop the record on this point. The medical evidence is unambiguous: Claimant has experienced some symptoms of depression but has responded well to Prozac and is stable. This evidence is not contradicted elsewhere in the record and the ALJ had no reason to seek development on that point. The ALJ did not err in failing to develop the record or order a consultative mental examination.

    *B.    Obesity*

The court agrees that Claimant has failed to establish that the record evidence was ambiguous or otherwise inadequate and, thus, failed to establish that development of the record as to obesity was necessary. Even so, the ALJ will, upon remand, have the opportunity to evaluate the record evidence and determine whether it is sufficient to support a conclusive finding regarding obesity. Further findings as to the adequacy of the record evidence at this time would be premature.

*Conclusion*

For the reasons stated, the decision of the ALJ should be reversed and remanded for proper determination of the limitations posed by Claimant's obesity.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than January 20, 2011. If no objections are filed,

FINDINGS & RECOMMENDATION    13    {KPR}

review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 6th day of January, 2011.


                    /s/ John V. Acosta
                    JOHN V. ACOSTA
               United States Magistrate Judge